UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SECOND INJURY FUND,
    Plaintiff,

v.

NATIONAL UNION FIRE INS. CO. OF
PITTSBURGH PA,
    Defendant.

No. 3:10cv86(SRU)

## ORDER OF REMAND

This action was filed in Connecticut Superior Court by plaintiff Second Injury Fund (the "Fund"), acting by and through the Treasurer of the state of Connecticut, against the National Union Fire Insurance Company of Pittsburg, PA ("National Union"). National Union removed the action to federal court (doc. # 1), invoking diversity jurisdiction. It later filed counterclaims (doc. # 15) against the Second Injury Fund. The Second Injury Fund moved to remand (doc. # 5) on the grounds that there is no diversity jurisdiction because it is not a citizen of Connecticut for purposes of the diversity statute, 28 U.S.C. § 1332. The Second Injury Fund also moved to dismiss the counterclaims (doc # 18). For the reasons that follow, the motion to remand is **GRANTED**. Because I remand the action to state court, it is not necessary or appropriate for me to rule on the motion to dismiss, which remains pending.

**I.    Background**

As described in National Union's notice of removal, Plaintiff Second Injury Fund ("SIF" or the "Fund") is a special fund of the state of Connecticut which was created by act of the Connecticut General Assembly and which is administered by the Treasurer of the state of Connecticut, with a principal place of governmental operation in Hartford, Connecticut. At the time of service of the Summons and Verified Complaint, defendant National Union was and is

incorporated under the laws of the Commonwealth of Pennsylvania, with a principal place of business in New York, New York.

The Complaint alleges that the Connecticut Workers Compensation Commissioner ordered the SIF to pay workers' compensation benefits arising from an airplane accident at the Danbury Flight School ("Flight School"), and that the SIF has paid those benefits. The Complaint further alleges that the SIF is exposed to pay indemnity benefits up to a capped amount of $800,000.00 and is further exposed to pay uncapped medical indemnity benefits in connection with the worker's compensation matter. The Complaint alleges a right of recoupment against National Union and seeks double monetary damages, attorneys' fees, court costs, and interest as provided by Connecticut General Statute § 31-355(c), and "[s]uch other [relief] as the Court may deem just and equitable." It does not seek a declaratory judgment regarding the insurance policy issued by National Union.

## II.     Standard of Review

A district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ." 28 U.S.C. § 1447(c). The party asserting federal jurisdiction bears the burden of showing that the case is properly before the federal court. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In order for a defendant to remove a case to federal court, it must allege that the federal court has original jurisdiction over the matter. *See* 28 U.S.C. § 1441(b); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). It is well established that the defendant may only remove a case if the claim could have been brought by the plaintiff in federal court. *Merrill Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 804 (1985).

A removing defendant must support its asserted jurisdictional facts with "competent proof" and "justify its allegations by a preponderance of the evidence." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (alterations removed) (*quoting McNutt*, 298 U.S. at 189). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citation omitted).

**III.   Discussion**

The diversity jurisdiction statute provides that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332.

A state is not considered a citizen for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973). A political subdivision or entity of a state *is* a citizen of the state for diversity purposes "*unless* it is simply the arm or alter ego of the State." *Moor*, 411 U.S. at 717 (emphasis added, quotation removed); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999). Diversity jurisdiction does not exist in this case if the Second Injury Fund, acting by and through the Treasurer of the state of Connecticut, is an arm or alter ego of the state of Connecticut.

The critical issue distinguishing a "political subdivision or entity of a state" from an "arm or alter ego" for the purpose of diversity jurisdiction is that, in the case of the latter, the "state is

-3-

the real party in interest." *Krisel v. Duran*, 386 F.2d 179, 181 (2d Cir. 1967). The Second Circuit has directed courts determining whether an entity is an arm or alter ego of a state to consider six factors:

> (1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state.

*McGinty v. New York*, 251 F.3d 84, 95-96 (2d Cir. 2001) (citation omitted).[1]

I first note that neither party has made significant argument regarding these factors, which I am required to consider. National Union bears the burden of proof on the jurisdictional issue. It cites cases outside this jurisdiction for the proposition that the court must conduct a "subjective analysis of various factors" and raised factors it considered important to determine whether the Second Injury Fund is an arm or alter ego of the state. (Def. Mem. of Law in Opp. to Pl. Mot. to Rem. for Lack of Diversity and Pl. Mot. to Dismiss Pursuant to FERP 12(b)(1) ("Def. Mem.") at 21-22.) National Union additionally argues that the "real-party-plaintiff" in this case is the Flight School and that I should consider its citizenship, rather than the citizenship of the Second Injury Fund, to determine whether I have subject matter jurisdiction. (*See id.* at 14, 12-20.)

National Union has failed to show that the Flight School is the "real party in interest" in

---

[1] In *McGinty*, the six-factor test was articulated in the context of an Eleventh Amendment sovereign immunity defense. The first step in analyzing whether a state entity defendant enjoys sovereign immunity is determining whether the entity is an arm of the state; thus, the tests initially are parallel. *See Krisel*, 386 F.2d at 181; *see also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). *McGinty* articulated an additional two-step inquiry into the potential threat posed to the state's fisc; that inquiry is irrelevant in a case in which the state entity is the plaintiff seeking damages. *See Treasurer of the State of Connecticut v. Forstmann Little & Co.*, No. 3:02cv519, 2002 WL 31455245, at *3 n.3 (D. Conn. Oct. 15, 2002).

this case.  Neither has National Union shown that the factors it identifies are relevant to or controlling of the analysis whether the Second Injury Fund is an arm or alter ego of the state.  The six factors identified in *McGinty* indicate that the Second Injury Fund is indeed an arm or alter ego of the state.  Accordingly, I do not have subject matter jurisdiction over this case and must remand it.

      A.      <u>The Real Party in Interest</u>

National Union argues that the Flight School is the real party in interest in this case.  To support that argument, National Union notes that the Flight School may benefit indirectly if a court rules against National Union and orders it to pay money damages to the SIF.  National Union misconceives the real party in interest doctrine.

"Generally, the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *United States ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 98 (2d Cir. 2008) (quoting *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)).  "The use of the 'real party in interest,' as a term of art, permits courts to intelligibly discuss those instances in which an individual with a substantive right must appear as a party to litigate a claim, and those instances in which another may appear in his stead." *Id.* at 99.  Thus, a real party in interest analysis asks whether the legal right asserted in the lawsuit belongs to the plaintiff Second Injury Fund or to the Flight School.

Even assuming the Flight School indirectly may benefit from SIF's suit, the face of the complaint alleges that the SIF paid money to satisfy a worker's compensation claim and that it now seeks recovery for those monies paid.  National Union does not and cannot dispute that SIF seeks reimbursement for money it paid.  That the SIF could have pursued the Flight School rather

than National Union does not change the real party in interest analysis; at most, the Flight School is an interested party, not the real party in interest. The right asserted belongs to the SIF and it is the proper plaintiff in this case.[2]

      B.      *McGinty* Factors

I now examine the six factors identified by the Second Circuit in *McGinty*. I conclude that the plaintiff Second Injury Fund does not act autonomously from, but rather is an arm of, the state of Connecticut.

            1.      *How the Second Injury Fund Is Referred to in its Documents of Origin*

The Second Injury Fund is established in the Connecticut General Statutes, § 31-354, which states: "There shall be a fund to be known as the Second Injury Fund." The noun "fund" means a "sum of money set aside for a specific purpose." Webster's II New College Dictionary 453 (M. Berube, et al. eds., 1995). That the Second Injury Fund is a described as a sum of money set aside by the state for a specific purpose articulated by the state tends to show that when the Fund appears in a lawsuit, the state is the real party in interest. I therefore find this factor points toward finding the Fund is an arm or alter ego of the state for the purpose of

---

    [2] Notably, any money damages awarded in this suit will inure directly to the Fund. The doctrine of *parens patriae* "allows states to bring suit on behalf of their citizens in certain circumstances by asserting a quasi-sovereign interest . . . [and] derives from the common-law principle that a sovereign, as parent of the country, may step in on behalf of its citizens to prevent injury to those who cannot protect themselves." *Connecticut v. Physicians Health Servs. of Conn.*, 287 F.3d 110, 119 (2d Cir. 2002) (citations and quotations omitted). A state suing as *parens patriae* for the benefit of all of its citizens retains its sovereign capacity. *See Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363, 370 (D. Conn. 1979). A state suing on behalf of a "circumscribed group of its citizens," however, may "sufficiently dispose[] with its sovereign capacity" to be subject to the district courts' diversity jurisdiction. *Id.* at 370-71. The SIF does not claim to sue as *parens patriae*, does not sue on behalf of the Flight School or its owners, and does not seek to recover damages that will be paid to a particular private citizen of the state.

diversity jurisdiction.

### 2. *How the Governing Members of the Second Injury Fund Are Appointed*

According to the statute, the "State Treasurer shall be the custodian of the fund and all disbursements from the fund shall be made by the Treasurer or the Treasurer's deputies." Conn. Gen. Stat. § 31-354(a). Additionally,

> The Treasurer may, in [her] discretion, appoint not more than four assistant administrators as necessary to assist [her] in carrying out [her] duties as custodian . . . . Such assistant administrators shall be in the unclassified service and shall serve at the pleasure of the Treasurer. Such assistant administrators shall be sworn to the faithful discharge of their duties and shall perform such functions relating to the administration of the Second Injury Fund . . . as the Treasurer may direct.

Conn. Gen. Stat. § 31-354a(a). Most importantly, the statute indicates that the Treasurer is the sole "governing member" of the Fund and all assistant administrators serve "at the pleasure" of the Treasurer.[3] The Treasurer is a constitutionally elected state officer who bears statutory duties and exercises statutory powers. *See Forstmann Little & Co.*, 2002 WL 31455245 at *3-4. This factor also suggests that when the Fund is a party to a lawsuit, the state of Connecticut is the true party in interest.

---

[3] The fact that, pursuant to Connecticut General Statute Section 31-349e, the Fund may also have an advisory board does not change this analysis. First, members of the board are chosen by a combination of the Treasurer and members of the General Assembly, who serve *ex officio*. The authority of each member derives directly from being state elected or appointed officials. Second, the advisory board does not have binding power over the administration of the Fund but merely advises the Treasurer "on matters concerning administration, operation, claim handling and finances of the fund."

Neither is the analysis affected by Connecticut General Statute Section 31-349d, which establishes that the Treasurer may solicit proposals for the managing of Second Injury Fund claims. The power provided to the Treasurer is exercised in her discretion, which indicates she represents the state's interest in exercising that power.

        3.     *How the Second Injury Fund Is Funded*

National Union argues the Second Injury Fund is financially autonomous and maintains separate accounts for separate purposes within the funds.[4] (Def. Mem. at 22.)  Indeed, the statute provides "[t]he sums received shall be accounted for separately and apart from all other state moneys," but it further provides that "the faith and credit of the state of Connecticut is pledged for their safekeeping."  Conn. Gen. Stat. § 31-354(a).  The statute requires that "[e]ach employer, other than the state, shall, within thirty days after notice given by the State Treasurer, pay to the State Treasurer for the use of the state a sum in payment of his liability under this chapter . . . ."  *Id.*  It further provides, "[a]ny employer or any insurance company acting as collection agent for the custodian of the Second Injury Fund who fails to pay in accordance with such regulations shall pay a penalty to the State Treasurer of fifteen per cent or a minimum of fifty dollars on the unpaid assessment or surcharge."  *Id.*  And finally, "[t]he assessment required by this section is a condition of doing business in this state and failure to pay the assessment, when due, shall result in the denial of the privilege of doing business in this state or to self-insure."  *Id.*

These provisions show a close connection between the Fund and the state's powers to tax and regulate business.  Indeed, the fact that the state has pledged its "faith and credit" for the safekeeping of the funds shows a direct connection between the Fund and the public fisc.  It is further evidence that the Fund is an arm or alter ego of the state.

---

[4] The fact that the defendants emphasize, i.e., that the Second Injury Fund has a finance account that is held and administered separately from the settlement account, Conn. Gen. Stat. § 31-354b, is irrelevant to whether the Fund as a party to a lawsuit represents the interests of the state.  The finance account is discussed in further detail below.

      4.  *Whether the Second Injury Fund's Function Is Traditionally One of Local or State Government*

  The Second Injury Fund was established "primarily to encourage the employment of persons with an existing disability and, at the same time, to provide adequate workers' compensation benefits for them." *Davis*, 232 Conn. at 320. The function of public insurance is traditionally a function of state government, and this factor, too, points toward the Second Injury Fund being an arm or alter ego of the state for the purposes of diversity jurisdiction.

      5.  *Whether Connecticut Has a Veto Power over the Second Injury Fund's Actions*

  National Union does not identify which factor the following facts relate to, but it appears to argue that they indicate the Fund is autonomous of the state. The Second Injury Fund is statutorily authorized to acquire, hold title to, and dispose of property in its own name. (Def. Mem. at 22.) National Union notes that the Second Injury Fund has significant operational autonomy, that the Fund has various procedural powers in a lawsuit, that it can bring suit and be sued in its own name, and that it is authorized to implead and be impleaded in any competent court. (Def. Mem. at 21-22.)

  The ability to hold and acquire property does not make the Second Injury Fund independent. Those powers are provided as part of the administration of a separate "finance account." Conn. Gen. Stat. § 31-354(c) (authorizing the establishment within the Second Injury Fund of "three accounts to be known as the operating account, the settlement account and the finance account which accounts shall be held separate and apart from each other"). The finance account is a trust fund and the Treasurer's power to enter into contracts is granted for the benefit of this account. The existence of and the Treasurer's powers regarding this trust account in no

way diminish the connection between the Fund and the public fisc, nor the fact that the faith and credit of the state is pledged for the Fund's safekeeping.

The Fund did not merely sue in its own capacity, but filed suit in state court acting by and through the Treasurer of the state of Connecticut. The statute authorizes the Treasurer to bring suit: "[T]he Treasurer is authorized to bring an action, or join in an action as provided by said section, when [s]he has paid, or by award has become obligated to pay, compensation out of the fund." Conn. Gen. Stat. § 31-352. As described above, the Treasurer is a constitutionally elected state officer and is not financially independent of the state. *See Forstmann Little & Co.*, 2002 WL 31455245 at *3. In *Fitzpatrick v. Bitzer*, 519 F.2d 559 (2d Cir. 1975), the Second Circuit held that the Connecticut State Employees Retirement System was the alter ego of the state, under a sovereign immunity analysis. It noted that the entity "has none of the indicia of independence from the state, such as separate incorporation or a power to sue in its own name. It is controlled by the state treasurer . . . . Although the money in it may be used only for a designated purpose, it nonetheless remains public money." *Fitzpatrick*, 519 F.2d at 565 (citations and quotations omitted). The Second Injury Fund does not have a corporate existence, and its power to sue must be exercised in conjunction with the Treasurer.

Although I have not found support in the statutes for the factor that the state may "veto" an act of the Fund, I find sufficient connection between the Fund and the State to support that the Fund is an arm or alter ego of the state.

> 6. *Whether the Second Injury Fund's Financial Obligations Are Binding upon the State*

The Fund's financial obligations clearly are binding on the state: "The sums received

shall be accounted for separately and apart from all other state moneys and the faith and credit of the state of Connecticut is pledged for their safekeeping." Conn. Gen. Stat. § 31-354(a).  This factor is further evidence that Fund is an arm or alter ego of the state.

## IV. Conclusion

National Union bears the burden of showing removal was proper, but it has not and could not produce evidence sufficient to show that the Second Injury Fund is not an arm of the state under the Second Circuit's six-part test.  Diversity jurisdiction therefore does not exist because the Second Injury Fund is not a citizen of Connecticut for diversity jurisdiction purposes.

The motion to remand (**doc. # 5**) is **GRANTED**.  The case is remanded to the Superior Court.

It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of July 2010.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge